May it please the Court. I'd like to focus my presentation this morning on the use question, which has sort of emerged as the predominant issue in this case. For if there were no use, if the bodily injury in this case, the rape, didn't result from the use of the motor vehicle, the bus, then there would be no duty to defend and no breach. I'll refer the Court first to the California Insurance Code, Section 11580.06G. This statute defines what the word use means as used in auto policies, and we believe it's dispositive. Well, let me ask you this, Counsel. Is the interpretation of the word use and of the statutory, of the words in the statutory definition, affected by the fact that this was a common carrier? I don't believe it does, Your Honor. The statute applies to all motor vehicles. It doesn't carve out any sort of commercial vehicles. There was a recent case decided by the Ninth Circuit. I can't call it to mind at this moment. It was decided after the briefs were filed in this case, where the Court held that the statute didn't draw a distinction between commercial and non-commercial vehicles. Picking up on that theme, the statute doesn't draw a distinction between vehicles with dual purposes. This is a case where you have a party bus, and it had two purposes, transporting passengers from place to place and hosting parties en route. The party goes on, right? I suppose so. So, I was looking at the cases interpreting the statute to see if there was another case where there was a dual-purpose vehicle. And there is one. It's the Scottsdale v. State Farm case. And in that case, there was a truck that served as a means of transport, but it also served as a platform for a cherry picker. And it so happened that the victim in that case was injured while operating the cherry picker on the bus. And the issue was, was the bus in use under the statute when this fellow was injured? And the Court held no. It referred to the definition of use, which means loading, unloading, maintaining, or operating. If the bus had been, just hypothetical, if the bus had been transporting the party goers back to where they first boarded the bus, and the bus stopped at a truck stop, and everybody got off the bus, and the bus driver, except the victim in this case, and the bus driver locked the door and raped the woman, would that be use? I don't believe so, Your Honor. No California decision, state or federal, has ever held that the intentional assault of a victim within the confines of a vehicle constitutes use under the statute. There would be nothing about the movement of the bus, or the operation of the bus, that would lead to the injury. It sounds like you're arguing an approximate cause. And don't the California cases say there's no approximate cause requirement? The California cases construing the causation requirement for purposes of an auto policy apply the substantial factor predominating cause test. That's pretty clear. Here's what the California court said in Partridge, State Farm v. Partridge, you're surely familiar with it. I am. The California cases uniformly hold that use of an automobile need not amount to approximate cause of the accident for coverage to follow. Some minimal causal connection between the vehicle and an accident is, however, required. Although the vehicle need not be in the legal sense a proximate cause of the injury, the events giving rise to the claim must arise out of and be related to its use. In the years after Partridge, Your Honor, the California courts of appeal have in large measure adopted this substantial factor predominating cause test, as has this court in the Oregon Mutual case. That's the test that's favored. And in the Partridge case- Why would we want to look to Oregon law? No, no, no. It's a nice- It's the Oregon Mutual was the name of the insurance company, but it was a California decision. Okay. So you agree? It is, sir. Yes, sir. That was a situation where there was a dog in the back of a truck and it bit a passerby. And the question was, was the car in use at the time? And the court held no. And the court held, by reference to the statute, because the vehicle was not being operated, maintained, loaded, or unloaded at the time, the vehicle wasn't in use. Now, in Partridge, that's the situation where you had some boys hunting jackrabbits in a moving car. And it was the movement of the car over bumpy terrain that caused a gun in the car to discharge. In that case, there was some movement, some operating, that operation of the vehicle that contributed to the injury. This case is different. Back up just a little. Sorry. Yeah. Go ahead. Okay. Well, in this case, the driver and his accomplice used the bus as a captivating device, right? They did. They locked the patron in the car. They used the furniture on the bus to rape her. It's very similar to the Julie R case, which is cited in the briefs, where an assailant used his BMW. He drove his date to a remote location, parked along a fence so she couldn't open her door, locked the car, restrained her in her seat using the seatbelt, and reclined the seat so he could rape her there. And applying the substantial factor predominating cause test, the court held that there was not a sufficient causal connection between the use of the car and the bodily injury. On these facts, can we say that the use of the bus was, and I'm quoting from the USAA United States Fire Insurance case, wholly disassociated from, independent of, and remote from its use? I think in this case, the bus was incidental to the rape. The driver could have taken this woman off of the bus and used the bus as sort of a shield and raped her in the parking lot. He could have driven her to some location and raped her there. That he chose the bus because it was an advantageous place to rape her has been held in Julliard in the Peters case, which involved a yacht, and in the Miller case, which involved the molestation of children in a car. What's the standard for an insurance carrier's duty to defend under a reservation of right? An insurance company's duty to defend is based on whether the allegations in the complaint state a cause of action or an injury within the scope of coverage. And it's based either on the four corners of the complaint or extrinsic facts known to the insurer at the time of the tender of the complaint. And what's the consequence under California law for declining to defend even under a reservation of right? Well, you have to be right. If you're wrong about it, then you can, as in a case like this, be responsible for a stipulated settlement and consent judgment, so long as that judgment and settlement is reasonable. One question, just about your reliance on the statute. Is it your view that basically if the car, if the car or the bus is not sort of rolling down the road, then there can't be any use? That is my position because the statute says that. The statute... How do you explain then a case like Prince? Isn't that the one where the kids died? That is. In that case... You just say that case is wrongly decided? I don't think the issue came up. The court in that case held that there was no coverage because the vehicle was the instrumentality of the children's death. This is a situation where children... It wasn't that there was coverage, right? I think the court held there wasn't coverage because it involved an exclusion. It was sort of a reverse situation, but use was the issue. And the court didn't address the statute. I don't know why. I don't know if it wasn't briefed, but the court held that the car there was essentially an oven where these children suffocated, having been locked in. This case is different. This rape could have happened anywhere. There wasn't anything peculiar about the bus that caused this injury. Again... What's peculiar about the car and the trim? Because the only place this woman could have left the children to suffocate would have been inside the car. If she had left them on a park bench or outside a grocery store, they wouldn't have suffocated. And the court made that point in that case. Car was really central to the... As you say, it could not have been accomplished anywhere else. Whereas here, your argument is it could have happened in any of a dozen, half dozen places. And as it happened in the Prince case, the court observed that unlike a sexual assault, which could happen anywhere, the type of death these children suffered in that case could only happen in a car. Your position would be... Let me just create a fanciful hypothetical, hopefully fanciful. The bus is transporting the party goers after cavorting at the nightclub back to wherever they're going to go. And two of the party goers raped one of the folks in the back. But the bus is moving. They're driving. You say that counts as operation of the vehicle? No, I don't think so, your honor. The operation... If the vehicle is moving, then that counts as use. But so what... There's some additional causal relationship then that has to be between the use of the bus and... I mean, between the driving of the bus and the accident? For a bodily injury to be covered under the use provision of an auto policy, the bus has to be either being operated, loading, unloading, or maintaining. And subdivision F of the statute defines operation as being the conduct of the person sitting immediately behind the steering controls of the vehicle. And that's why in the Scottsdale case, the cherry picker case, the court said there was no use. Even though the fellow was operating the cherry picker, he was not sitting behind the truck's Okay, but I mean... I don't know if that answers your question. So the hypothetical is, other party goers are raping this woman on the way home from the club. There's no use. It's just the bus is the site of the rape. I just don't think that, I mean, we have other cases like Prince, like we have a bunch of dog bite cases for whatever reason, but the one where the dog is actually inside the car trying to get... The bed of the truck. No. There's one where I think where the dog... He runs out. There are so many of these cases. Well, I mean, we have all these dog bite cases, but they don't all involve the actions of the driver at the wheel, and yet the courts have said... But the courts have found there's no use in those cases. Not in the one where the dog is trying to get from the back seat to the front and bites one of the passengers. I believe that case may have been decided before the use statute was enacted, but even if it wasn't, courts have found that where a dog is being unloaded from a car, then there is use because... And there's a more recent case, too, where a passenger was being unloaded after an accident by a good Samaritan and was injured when she was being dragged away, and the court found use because unloading a passenger is unloading for purposes of the statute. You want to say something? Oh, I'm sorry. So let us assume, shocking though it may be, that the California state courts have not been wholly consistent in their use of this statute. So we have to then predict what the highest California court would say in this case. So what decision of the highest California court would you most rely on if you had to pick one case in that regard? If I had to pick one, I would pick the Scottsdale case, the cherry picker case, because an appellate court in California addressed what use means where a... I'm asking you for the Supreme Court. Is there a case for that? I mean, most of these cases... They're court of appeals cases. I mean, the Partridge case, even though it was decided before the statute was enacted, in that case, the court held that there had to be something about the movement of the vehicle, the operation of the vehicle, that led to the injury, the discharge of the gun in that case. I don't... I mean, I thought the language that Judge Hawkins quoted to you was the standard that Partridge gave us. I don't remember... The Partridge case held that some minimal causal requirement... Yeah, and that's met here. I mean, I think you lose under Partridge. I don't think the case there insisted upon some movement of the vehicle. If Partridge were the last case on this subject, but that case has been interpreted many times since it was decided many years ago. And the standard that has been applied consistently was this substantial factor predominating cause test. And again, this court has applied it several times to issues just like this. Okay. Okay. We'll give you some time for rebuttal. Okay. Thank you, sir. You're over now. But thanks for your argument. And we'll hear from counsel for the plaintiffs. Good morning, Your Honors. Paul Fogel representing Mr. and Mrs. Gradius. As a matter of law, Lincoln owed a duty to defend in this case because this lawsuit arose out of the bodily injury to Mr. and Mrs. Gradius caused by an accident that resulted from use of the party bus. Your right judge... If you look, Judge Rakoff, at Judge Kuhl's opinion, that was a two-to-one decision by Judge Kuhl with what was called a thoughtful dissent, that's what Prince said, by Justice Epstein. Unlike the usual unthoughtful dissents? Sorry? Right. Yes. Like the usual... Judge Kuhl said, and I think this is very interesting language, if a zombie, that's the guy who went on the date with the woman who parked his BMW next to the fence on Interstate 5 so she couldn't get out, if a zombie had driven to a remote location or to a place where he had prepared equipment to restrain her, use of the car would have contributed to the potential that a zombie would be successful in his attack. Let's look at that again. If a zombie had driven to a remote location, use of the car would have contributed to the potential and contributed, Judge Hopkins, you are right, Partridge case says any causal connection, minimal causal connection. Let's look at the four quarters of the complaint, which counsel has invited you to use as the test for duty to defend. What did the complaint say on page 381? The parking lot was dark and no one else was at the lot. There was no traffic in or out of the lot and it was not patrolled in any manner. Lillian Gradius was too far from the club to be heard if she screamed. But I don't remember in your complaint, correct me if I'm wrong, that you allege that they went to that parking lot in order to have a locale for which they could accomplish the rape. This was the parking lot where a vehicle that was waiting would wait. It happened to have those incidental qualities that you allege. The complaint alleged that the driver invited plaintiff and her friend, who couldn't get into the club because neither had ID, to enter the bus. And when they entered, he moved the bus to a dark parking lot that was across the street from the club. Okay. What paragraph? Page 381. That's the complaint, Gradius v. Nwadiki and ABL, not Gradius v. Lincoln. That's the complaint, that's the four corners of the complaint that counsel referred to that we look at, the insurers are supposed to look at, when they're determining a duty to defend. Julliard is the worst case for us and it's distinguishable. The best case for us is the Connell case. There, a cabbie driving with a sailor, his friend, picked up a fare in Southern California. The fare said, take me to my house, gave the address, I'm going to pay you, even pulled out the money. They go by the guy's house, they don't stop, and they take him to what the court referred to was an area where there were no buildings or lights. And then the two guys, the sailor and the cabbie, get the guy out of the cab and assault him and beat him, and the court says, no, essentially, no reasonable person in their right mind would think that this was not a use of the cab. The cab was used to transport the person to a remote location, no lights, no buildings, kind of like the parking lot. No lights, far away from anybody who could hear Lillian scream. And that was used, that was used in the Connell case. We also have... Do we know how much time elapsed between the movement of the bus to the location of the assault and the actual assault? We do not. I mean, if you look at the complaint, it details blow by blow what happened inside. She went to sleep, she was sleeping on the bench, the nice, beautiful, if you look at the pictures, the nice, beautiful, plush, velvet bench, and then he woke her up, and then he sort of got closer to her, and then she pushed him away, and then there was the nephew, Rosales' nephew, locked in a bathroom. How many cars have bathrooms? And Rosales blocked the only one, the only single exit to the bus. How many vehicles have only one exit? Not very many. The district judge here, Judge Breyer, observed that. And then said, don't worry, don't worry, calm down, blah, blah, blah, and then assaulted her. Can I ask you this? The cab driver case that you relied on, your opponent's response to that is that it was – I think it was like a 1948 decision. Pre-partridge. Well, not only pre-partridge, but pre-statute. Pre-statute. And so that's their main response to that case. What is your response to their reliance on the statute? My response is even under the minimal standard that we get from partridge – No, no, no. No. Forget partridge. Okay. I'm talking about the statute. No, but I'm saying if you apply those facts – Wait, wait. But the statute – To the statute. Their argument is that the statute was enacted precisely to narrow, to constrict the definition of use that partridge and other cases had come up with. So I'm asking you, what's your response to their reliance on the statute, not on partridge? I think partridge, you win under that. Statute says operating, maintaining, loading, or unloading. Operating, maintaining, loading, or unloading. And then it defines operating in a particular way. Operating. And so my response is that's operating the cab to transport someone to a dark location where there's nobody around to then get them out of the cab and beat them up. That is use under the statute. Judge Watford, you had a dialogue with my opposing counsel about operation, whether that has to be movement. Pacific indemnity, 270 Calab Second. Use must be understood in its most comprehensive sense. The term is not confined to motion on the highway. But that's, again, a pre-statute case, right? Okay. How about Cabral v. L.A. County Metropolitan Transportation Authority, 9866 Calab Fourth? Operation is a concept broader than driving and includes acts that are fairly regarded as necessary incidents to driving a vehicle. Use is an even broader concept. It extends to any activity utilizing the vehicle. Can we, since we've beaten use for a while, can we turn to the damage issue? Yes. Don't the California cases and California law require in an instance like this that a determination be made not only that the settlement is fair and reasonable, but where appropriate that there's apportionment of fault? Well, we have in- Start with a yes or no. Not really. What the cases require is the tech built procedure. And under California law, a good faith settlement, when A sues X and Y, and A settles with X, A and X go to court for a good faith determination that the settlement is in the ballpark, which assessment of- Can you show me where in this record, Judge Breyer, apportioned fault between the driver of the bus, the owner of the bus, et cetera? He did not. And- Is he required to do that? He was not required. And that is because there's evidence in the record. He was not required. But don't forget, we have evidence in the record for things. We have a trial judge who presumably, when he approved the settlement, we're talking about Judge Kahn. You're talking about Judge Breyer. I'm talking about Judge Kahn, who approved the stipulated judgment. Judge Kahn presumably found that it was in the ballpark. Attorney Ivan Gold filed a declaration attesting to that fact, attesting to his 20 years in handling cases like this, and 20 years of handling cases involving intentional tort feasors, whose intentional acts were the cause of the negligent tort feasor. That's what we have here. At 283 of the record, he files a declaration. This is in the state court, all in support of the judgment. Lillian Gradius outlined her damages in her victim statement at 298 and 99, and again at 301 to 07. And we have the Roche case. The Roche case is a case where $5.3 million judgment, employee is fired from the workplace, told to stay away from the workplace, his supervisor stays at the workplace, disgruntled employee comes on the premises, employer said, watch out, don't let him on the premises. Employee comes onto the premises, doesn't murder, shoots the supervisor, $5.3 million damages. Court of Appeal upholds a 75% fault for the employer, who failed to protect against the shooter coming back. Did the state court judge, in this case, apportion fault? He did not. Judge Kahn did not. Wasn't he required to? I don't think so. He's required to determine whether the settlement is fair and reasonable in the ballpark. How can one do that without apportioning fault? In our brief, we relied on a concept of presumption of validity. I forget the precise words. The Grudillas are no longer married, is that correct? That's correct. How long were they married? I don't really know. How long did the marriage last after the assault? I last saw them two years ago, and they were still married. We cited in our brief a concept called the presumption of regularity, which permits a court to presume that the district court and the state court were aware of the law and applied it correctly, citing a case called Ibarra v. United States, 461 Fed Second 1195, footnote 1. That had to do with an elocution. Did the judge properly give the defendant his rights when determining whether the plea was voluntary and knowing? The court noted that the court reporter's notes had been destroyed, and the sentencing judge was dead. There's no evidence to dispute the record and the presumption of regularity. We relied on that presumption of regularity to state or take the position that Judge Kahn reached a fair and reasonable result in approving the stipulated judgment in this case. So the concept of a presumption of regularity, which is settled in federal law, and that's a Ninth Circuit case from 1972, should apply to validate Judge Kahn's number, 2.5 million. In this case, Judge Breyer did not have to conduct an inquiry in that regard. I'm prepared to address any other issue concerning use and also prepared to address the accident and the covered auto issues. How about the covered auto? Okay. So the better of the arguments that they now have is the one that I guess you say is waived, right? In other words, that they weren't on notice at the time they denied coverage that, in fact, this . . . Right. Right. So, you know, it seemed to me that that . . . I guess I thought that was a close issue because they say, well, look, we got the VIN number. We figured out who owns it. This isn't one of the buses on the policy that we agreed to cover. Hey, Mr. . . . I don't know how to say his name. Nowicki. Nowicki. Nowicki. Nowicki. Nowicki. On that basis, we're going to deny coverage. But, hey, if you've got some other information that contradicts this, please let us know. We'll be happy to reconsider. And he apparently doesn't respond. And I wonder . . . We don't know if he does or doesn't. That's important. Yes. Why is that important? Because who has the burden here? Who has the burden of ferreting out all the possible information that could lead to coverage or non-coverage? It's important. And Judge Breyer made that precise point, citing the Montrose case from the Cal Supreme Court. It is not . . . Once we make a prima facie case, we make a claim. We make a claim. We've been sued by the Gradiases. We have coverage under the policy. The insurer . . . It's very interesting if you look, Judge Watford, at the coverage denial letter in March of 2009. Which is at page 403. Lincoln says, oh, we see that this MCI bus is registered to somebody in Coachella, Coachella Valley. And so we're denying . . . It cites only the . . . He says, it's not listed as one of the listed buses. Therefore, coverage denied. Now, if you're an insurance company, wouldn't you . . . That's theory A. But there are two theories of coverage. Theory B is a substitute auto. If you're an insurer and you have a duty to ferret out all information . . . We know this from the California shopper's case. Insurer must diligently pursue the requisite inquiry into facts relevant to the duty to defend, meaning that it will be charged . . . This is a quote. . . . with notice of all those facts which it might have ascertained had it done that inquiry. California shopper's, 175 California. Okay. So you know that there are two theories of coverage under the policy. You're the insurance company. Don't you think that Lincoln should have cited that second passage? No. It just went, bus not listed. Therefore, coverage denied. Well, but tell us, insured, Mr. Insured, tell us if we're wrong. You're saying they had to say, there is another theory under which this bus might have been covered. It's this provision. Please tell us if you have facts that . . . Why, Mr. Nwadiki, are you seeking coverage for an incident regarding the MCI bus registered to X, Y, and Z in Coachella Valley and not these two buses? And he could have said, he would have said what he said three years later in two detailed declarations, because my three buses or my two buses were being serviced. And that's what Judge Breyer said. In his decision where he quotes Montrose, he says, it's not Mr. Nwadiki's duty to prevail. The insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage. The insurer must prove it cannot. This is why I say it's a burden question. And the burden was on Lincoln to ferret out under California shoppers all of the eliminate the possibility of coverage before denying. Not to have even cited the substitute auto provision, which is strange, because in that coverage letter, chapter and verse, sentence, paragraph of, you know, mind-numbing policy language, right? But not the key provision, the substitute auto provision. Now, I find that very strange, where Theory A, they have eliminated Theory A. It wasn't the two buses that he get. I find it strange to cite every other provision of the policy, which is irrelevant, but not the key alternative, Theory B. And if you follow California shoppers and the heightened responsibility that insurer has in a duty to defend case, it is the insurer's duty to say, well, you've asserted coverage, but Theory A doesn't apply. How about Theory B? Okay. You're over. I just want to make sure that my colleagues have any further questions. Okay. Thank you. Thank you very much. Can we put two minutes on the clock for counsel for the appellant? It's like a shot clock. I'll just recap very briefly. To your point, Your Honor, I think the Prune case, which we've cited in our papers, and which was cited in the briefs below, requires the court reviewing the settlement amount for reasonableness to engage in a comparative liability analysis. It says that flat out, and that just didn't happen in this case. The record about that is clear. I'm not suggesting that the $2.5 million settlement is out of the ballpark. It's just you have to figure out, based on the comparative liability of all of these defendants, including the rapist and the two people who provided him, knowing he had a criminal record. The insured, who didn't know about his criminal record, that's the allegation, would have been on the hook for that amount. The Connell case, as you pointed out, Your Honor, was decided decades before the U statute was enacted. I think that it makes it irrelevant here, and that you need to focus on the cases interpreting the U statute in this context. Finally, on this question of whether the bus was known to be a covered auto and when it was, all I can say is that the burden is on the insured in a case to provide a carrier with extrinsic evidence showing that the insured is entitled to coverage. Lincoln General did not get that information until after this case had already settled, so there couldn't have been a duty to defend on that basis. Your adversary says that Julie R., which he concedes is the best case for you, but can be distinguished among other grounds by the fact that the bus was used to transport the victims to a location that only buses could be in, or a parking lot only vehicles could be in, that was particularly well suited for the rape. What about that? Well, that's precisely what happened in Julie R. Remember the driver drove his date along, is it Highway 5 here in California? On the side of the highway, up against a fence so that she couldn't get out. It was a remote location, and he raped her there. It was the means of transport to the scene of the crime, and the car itself provided a favorable situs for him to accomplish the rape, but the court still held that causation was lacking. What about the language that your adversary quoted, though, from Judge Kuhl's opinion? Remind me. Suggesting that if, apparently the majority didn't view it as being true in that case, but if the driver of the BMW had driven her to a remote location, then we might be talking about a different story. I would have to fall back on the car wasn't in use when the bodily injury was sustained because a driver can't be driving his car and raping a passenger on the passenger seat at the same time. Okay. Okay. All right. Thanks very much. Thank you. We have arguments on both sides. The case just argued will be submitted. Will stand submitted, rather, and we will move to the second case on the calendar, which is West versus Colvin.
judges: Rakoff, Hawkins, Watford